Our seventh case for this morning is United States v. Campbell. Mr. Donovan. Thank you, Your Honor. May it please the Court, Opposing Counsel. I'm Chris Donovan. I represent Mr. Campbell on appeal. Back in August of 2016, on August 1, 2016, four very similarly situated young people, including my client, Mr. Campbell, made the foolish decision to rob a pharmacy in Milwaukee. Upon arrest, each of them gave a statement admitting their involvement, and they eventually all either cooperated or offered to cooperate with the police, and they all eventually pled guilty and proceeded to sentencing. When it became apparent to Mr. Campbell that the government would be seeking a higher sentence for him than any of his three co-defendants, he filed a sentencing memorandum presenting two principal sentencing arguments in support of his requested sentence for the minimal sentence of seven years and a day. And so that would be one day on the robbery, which is allowed under Dean, plus the seven years required on the 924C count for a total sentence of seven years and a day. Counsel, let me interrupt you here for a moment. Judge Stettmuller would have only had an obligation to discuss it if it was a meritorious argument. And he was sentenced below guidelines, and he didn't cooperate like the co-defendants did. So what's the argument that there was really a disparity here? Wouldn't those factors foreclose any claim of disparity? I don't believe so, Your Honor, because we recognize the difference in cooperation. We recognize the difference in roles in the offense. And our argument was notwithstanding those differences, or despite those differences, that the court should still not impose too much of a disparate sentence. And keep in mind, the court, no matter what it would have done here, had to impose a sentence nine months and one day longer than for either Jackson or Jones, who we argued were the two main participants. Ms. Jackson's the one who worked at the store, came up with the plan, gave the information on how to rob it, and then Jones is her boyfriend that provided the gun. And we always argued they were more culpable and more involved. But I get that, but doesn't case law in this circuit preclude the argument that there's a disparity if the reason for the reduction is cooperation? And his criminal history category was different as well, and also the fact that it was below guidelines. I don't think it precludes it. I think clearly if Judge Stamler would have said, look, the reason I don't want to impose a similar sentence here is because he ultimately didn't cooperate, or I think that his role is as aggravated because he did go into the pharmacy with the other two, then yes, I think that would have made it so that we don't have an issue here on appeal. But I don't think he's precluded from doing that by Seventh Circuit case law. I think the case law clearly says differences in cooperation can be a reason for disparity. Well, I wasn't meaning to say that he was precluded from giving a lower sentence. What I'm saying is that the differences were pretty clear that he was the only one who didn't cooperate. He was given a below guidelines sentence the same 15 months that two of the others had gotten on the robbery portion of it. So what I'm saying is it seems fairly obvious why Judge Stamler didn't give him a lower sentence like his co-defendants. So I'm just questioning why Judge Stamler had to address that argument as explicitly as you would have liked him to. Well, my response to that would be because we went to Paines in our sentencing memo to say, despite, again, the differences in cooperation and the other things, here's why you should still get these sentences as close together as you can and not have this disparity. And we specifically referenced, I believe, the Statman decision, which this court said disparities between co-defendants are always there. Did you use the word disparity? Yes, I did. In my sentencing memo, page 4, I believe, of my sentencing memo, which is at appendix page 11 of the brief. But Judge Stamler goes to some length to describe, I would just say in the affirmative sense, why he's giving the sentence he's giving. You know, this was significant. He says, we're looking at 84 months on count two. And he says, I appreciate you're not public enemy number one. But then he goes through very specific facts. I don't see anything in this transcript to suggest that he's not taking into account what a just sentence is. But he comes up with 99 months. I'm not sure where the procedural problem is in failing to address a principal argument. He does discuss a lot of legitimate factors under 3553A, no doubt. But his comments are kind of contradictory here, though, because on the one hand, he says, I recognize 84 months is a very significant sentence for a young man that otherwise had a lot of potential. How can these cases come along? You know, almost weekly, he says. So he's clearly drawing a balance, right? He is. But on the other hand, he says Congress takes discretion away from judges with these violent crimes and 924C offenses. And so I think that that's kind of contradictory, that he seems to recognize seven years could be enough here. But yet he still decides to tack on another 15 months on the underlying crime. Again, despite our expressed arguments in the sentencing memo, saying that here's why you should still narrow that disparity as much as possible. Where do you get him saying seven years might be enough? I don't see that. He says it's significant. But then a couple of pages later, after he has this little detour into history, a couple of pages later, he's just talking about the seriousness, deterrence, protecting the public. He's balancing all of this stuff, and he says, I think he needs 15 months on count one. At pages, I believe, 18 and 19 of the sentencing transcript, which is appendix pages 32 and 33, he says 84 months is a very significant sentence, particularly for a young man of 23 who has an awful lot of potential. So there he seems to recognize seven years standing alone is a significant sentence, which is what we were arguing was more than enough in this situation, and that Dean would allow him to go that low should he choose to. But that's where I can't find anything where he says, but I'm not allowed to do that. I just see him recognizing seven years is a long sentence, but then he does go on. You can't really stop before he says, but by the same token, and goes on for a page and a half about why this is a serious social problem, and that he in particular needs deterrence. I don't think that he ever finds he can't do what we asked him to do. I just think this is a case where he passes over it in silence. He doesn't recognize that he has the discretion to go as low as we argued. He doesn't recognize the disparity argument. And to address your question, Judge Barrett, this is on page four of our sentencing memorandum, appendix page 11. I say the government will probably argue that disparate sentences are justified because other three debrief by Mr. Campbell did not. But this court should not find that to be a compelling argument for the following reasons, then on the next page is where I start to list these different reasons. And again, the main ones are the timing of the arrests are beyond my client's control. He gets arrested. Well, he was given an opportunity to come in, and then he didn't, and he was given an opportunity to cooperate before White was sentenced, and he changed his mind and didn't do so. So it wasn't just the timing of the arrests. He could have. That's true. He waffles. He waffles. And that was damaging to him, and we recognize that, which is again why we. . . And moving to South Carolina was damaging to him. That's a separate issue that we have presented. And I'm happy to talk about that. We have this Fifth Amendment issue. The court gets wrong, I believe, based on what the government recited, and I put this on page 10 and 11 of my reply brief. The timeline is not how they make it sound. He moved months after the police tried to reach out to him. It's unrelated to the police reaching out to him. He has no knowledge of this arrest warrant. That's on a sealed case on the complaint. The indictment doesn't come out until October 12th. He doesn't move still for six weeks after that. Regardless of the adverse inference question, he still was given the opportunity to come in and interview before he moved to South Carolina. He was. He was still given the opportunity. So I think what Judge Wood and I are challenging here is the idea that it was solely the timing of the arrests that deprived him of his opportunity to cooperate. I don't know if I ever said solely, but it was a factor that decreased the value of his cooperation that was out of his control. Jones and Jackson get arrested almost immediately. White, I think, is a couple days later. And then my client, because of the different things I lay out on page 10 and 11, are months later. So I think it was part of it. And, again, that was one of the arguments that we really went to length to lay out for Judge Stanley to say, despite this, despite him waffling, despite these differences in cooperation, we still feel that nine months and a day more, which is the lowest he could have gone, nine months and a day higher than Jackson and Jones, is not warranted here. And he passes over that in silence. He doesn't address that. He doesn't address, again, the other mitigating argument that we made, the main one was under Dean, all his personal mitigating factors calls by itself for the minimum sentence here. His young age, lack of a violent record, good work history, he showed remorse, all of that stuff. Again, by itself, I think, justify what we were asking for. He passes over most of it in silence. So this isn't a case where we're saying that Judge Stamler didn't understand, I guess, Dean, or thought he was precluded from doing certain things. It was just he passed over all these in silence, despite prominent presentation in our memo. I'll save the remaining roughly one minute for rebuttal. Three quarters of a minute. Thank you. Okay, fine. Mr. Proctor. May it please the Court, Benjamin Proctor, a person of the United States here. Judge Barrett, you hit it on the head with regard to, let's get the facts straight here. Mr. Campbell, he made a decision. He's going to move to South Carolina for whatever reason, and that didn't work out in his favor. I think at this point it's conceded that he's one of the robbers of this pharmacy. So he gets called in August, decides not to come in. So even if it is a couple of months later, when he leaves Wisconsin for South Carolina, he's aware that he robbed the pharmacy and that some other people are being prosecuted. Yes, Your Honor. He may not know that there's an active arrest warrant out on him. That's absolutely correct, yes. But to get the facts straight, he had the ability to cooperate. He did flee. This arbitrary timing of arrest argument is meriless. And I think that also goes to part of the harmless error aspect that I raised in my brief, is that assuming Mr. Campbell made this unwarranted disparity argument, which I don't believe he did, at a minimum it wasn't a principal argument. He can refer to one sentence of a sentencing brief where he thinks that the government's going to, where he uses the word desperate. But his main arguments were there's a lot of factors of my background and things that you should consider in giving me a lower sentence. But those facts do not lie. They were questionable. They were questionable with regard to could he have cooperated. He had the opportunity to cooperate, and he didn't. And so that gets back to unwarranted disparities. The disparities are only unwarranted if you're similarly situated. Mr. Campbell has acknowledged that he wasn't similarly situated. The others cooperated. He did not. And Judge Statmuller's sentences imposed across the three robbers who went into the store reflects this. They all received 15 months for the robbery itself. The other two received 60 months on the 924 charge because of the government's motion to remove the mandatory minimum. The government didn't file a motion in Mr. Campbell's case, and he was sentenced to 84 months on that count. Moving on to the Dean argument. Mr. Campbell is arguing essentially that an experienced judge like Judge Statmuller didn't understand the discretion that he had. Dean had been out for more than two months, and there's nothing in the record indicating that Judge Statmuller didn't understand his discretion. There's no particular argument about Dean anyway, is there? I didn't spot an actual discussion of, well, now we're free to have the count two, 84 months plus only one day, which, of course, this court had said you couldn't. Dean was a change in the law for us. But I didn't see that thrashed out. No, that's correct. Judge Statmuller didn't address Dean in this particular case. But the question is whether or not he misunderstood his discretion. There's nothing in the record that indicates he didn't understand Dean. It had been out for two months. Nobody said your hands are tied, Judge, with regard to you have to follow. Nobody was arguing for Roberson or Icaguanu still apply, which they didn't after Dean. That isn't any part of this record. And as noted in a footnote in my brief, one of the co-defendants in this case made a similar argument, and Judge Statmuller spent a page talking about Dean, what Dean allows, the history of Dean. So it's clear that this judge really understood his authority there. I'll move on briefly to Mr. Campbell's last argument regarding the impermissible inference, which relates to Judge Statmuller's one line where he says that instead of coming to law enforcement, you took off. First, there's no impermissible inference here. That is a fact of the case. It goes directly in response to Mr. Campbell's argument that it's but for this arbitrary timing of arrest. I would have come in, Judge. I would have cooperated. You should give me a lower sentence because of that. Judge Statmuller rightly pointed out, well, no. Instead, you knew that you were wanted, and you took off. It's a statement of fact that directly responded to arguments that he had made. And there's no limit on what sorts of facts regarding the background, the actions of the defendant, that the judge can take into consideration when sentencing the defendant. This isn't a Fifth Amendment refusal to testify and an impermissible inference going on those grounds, which is the Mitchell case, which is the only case that Mr. Campbell relies on. It's entirely different there. Unless there's any other questions, I'm happy to answer. If there are any questions, I'm happy to answer. Otherwise, I rest on my brief and ask that the district court judgment be affirmed. All right. Thank you very much. Anything further, Mr. Donovan? Just a brief point on the last thing about if he took off. The government in its letter, I think this is that record, Document Entry 52, he says that the police spoke to Campbell by phone, asked him to come in and answer some questions because his name came up in an investigation. Is this like the August 23rd or whatever that was? Yeah, August 24th, 2016, correct. And so when Judge Stamler is saying, well, you had the chance to come talk to police and then you took off, that's just simply not true. He exercised his Fifth Amendment right not to talk to police, and he took off months later unrelated to him being contacted by the police. And to get to your honors question earlier, yes, I mean, he knew at that point he robbed the pharmacy. I don't think there's anything in the record to support that he knew others were being prosecuted for this, and so I don't think that that's a fact that can be relied upon in the record. And so I do think that Judge Stamler used the fact that he did not come in and sit down and talk to police and exercise his Fifth Amendment right not to testify adversely against him in contravention of Mitchell, and I think Mitchell is on point. With nothing else, I'll rest. All right. Thank you very much, and thank you. You were appointed, as I understand. And so we appreciate your taking the appointment and helping the court and helping your client. Thank you. And thanks as well to the government. We will take the case under advisement.